### ROBINSON et al. v. BALTIMORE & O. R. CO.

(Circuit Court of Appeals, Fourth Circuit. March 14, 1904.)

No. 500.

1. CARRIERS—RECEIVING GOODS—REGULATIONS.

A common carrier has power to make reasonable regulations governing the manner and place in which it will receive such articles as it professes to carry, and also to change or modify such regulations on reasonable notice to the public.

2. SAME—SHIPMENT OF COAL.

Where a carrier had designated a certain siding as the place at which it would receive coal for transportation, and such siding was not an unreasonable place, a shipper was not entitled to compel the carrier to receive coal from him at another siding, where merchandise other than coal was received, merely because the place so designated was not so accessible to such shipper.

3. SAME—INJUNCTION—PUBLIC NUISANCE.

Where a shipper of coal refused to deliver coal to the carrier at a siding designated for that purpose, and, in his endeavor to compel the carrier to receive coal at another siding, intended for shippers of other merchandise, blocked such siding with teams for the purpose of obstructing traffic, and took possession of cars intended for other shippers, and dumped coal at the siding and station, which resulted in the total suspension of all freight business at the station for two days, and he threatened to continue such acts indefinitely until the carrier submitted to his demands, such acts amounted to a public nuisance, and justified relief by injunction.

129 F.—48

Appeal from the Circuit Court of the United States for the Northern District of West Virginia, at Parkersburg.

W. S. Meredith, for appellants.

John Bassel, for appellee.

Before SIMONTON, Circuit Judge, and MORRIS and McDOWELL, District Judges.

MORRIS, District Judge. This is an appeal from a decree of the Circuit Court for the Northern District of West Virginia, dated April 24, 1903, perpetuating an injunction by which the appellants were inhibited from attempting to ship coal against the consent of the railroad company in the city of Fairmont, in Marion county, W. Va , at a point known as "Walker's Siding," or at any depot of the railroad company except the depot or point provided by the railroad company for the reception and shipment of coal. The bill was filed November 20, 1902, by the appellee, the Baltimore & Ohio Railroad Company, a Maryland corporation, complainant, against the appellants, citizens of West Virginia, defendants, alleging that the railroad company maintained at Fairmont, in Marion county, W. Va., a station at which it received, stored, and delivered goods and merchandise, except coal, and also had there certain side tracks, known as "Walker's Siding," where it placed cars to receive and deliver all kinds of goods and merchandise, except coal, and owned and maintained there a roadway about 60 feet wide, over which shippers and receivers of goods, except coal, were allowed to drive teams and wagons in order to deliver and receive goods to and from the cars on said siding, but that the railroad company had forbidden, and had given public notice that it forbade, any one to receive or ship coal from or by the cars at said Walker's Siding, and had designated another siding in said city of Fairmont, called the "Belt Line," as the place where it would receive and ship coal, and had so repeatedly notified the appellants. The bill further alleges that the appellants were not owners or operators of coal mines, and not regular shippers of coal, but had recently engaged in the business of hauling coal in wagons to Walker's Siding, in order to put it on the cars of the railroad company for shipment to various points; that the appellants had been repeatedly warned not to do so, but they had forcibly persisted in hauling large quantities of coal to Walker's Siding, and depositing the same in large quantities on said railroad, and in forcibly taking possession of, and putting the coal upon, the cars placed there for other goods and merchandise, and had forcibly obstructed and were continuing to obstruct shippers and receivers of other goods from using the siding, and said other shippers were threatening to bring suits for damage against the plaintiff railroad company; that the appellants had hauled and dumped large quantities of coal at its freight station, and had blockaded and stopped up one door of the station, and had blockaded the roadway by congregating and keeping standing there horses and wagons, which they refused to remove, and which prevented the railroad company from either receiving or delivering other goods from its

said freight station and Walker's Siding, to the irreparable injury and damage of the railroad company; that the said appellants for some time prior had been loading and shipping their coal from the designated point on the Belt Line, and the railroad company had assigned a certain per cent. of its cars for the use of the said appellants for shipping their coal, and had notified the appellants that they were subject to their use. The prayer of the bill was for an injunction restraining the appellants from obstructing the station, siding, roadway, and approaches thereto in the manner and by the means charged in the bill of complaint.

The answers of the appellants denied that the freight station and siding were maintained by the railroad company for other goods and merchandise, except coal, and averred that the station, and especially the side tracks and switches called "Walker's Siding," had been used and were maintained by the railroad company for the purpose of receiving and shipping coal in car-load lots, and denied that the Belt Line was a proper place to be designated by the railroad for the shipment of coal by the defendants, because it was over a mile farther in distance from defendants' mines, and the increased cost of the haul made the shipment of coal by the defendant at that point unprofitable. The allegations in the bill of complaint that the appellants had defiantly refused to comply with notice from the railroad that coal would not be received for shipment at Walker's Siding were not really controverted by the answers; and the depositions fully established that the defendants had resisted the order with force, and that great disorder had occurred, and an intolerable confusion and disturbance of the regular business of the station had resulted from the intentional blocking and obstructing of traffic by the appellants in order to force a compliance with their claims. The appellants' principal justification was that they had before the notice been in the habit, from time to time, of shipping small quantities of coal at Walker's Siding. The reply to this by the railroad company was that on account of the scarcity of other coal in the winter of 1902, and the rise in price, the quantity shipped at Walker's Siding became so great that it interfered with other merchandise, and the railroad company was compelled, in the reasonable regulation of its business, to provide another place for shipping coal from Fairmont.

Quite recently a case in all points similar to the case in hand was heard on appeal in the Eighth Circuit (Harp v. Choctaw, O. & G. R. R. Co., 125 Fed. 445); and, in a careful opinion by Circuit Judge Thayer, it was held that a railroad company had the right to make reasonable regulations, applicable alike to all shippers, as to the manner in which such a commodity as coal would be received for transportation, and could not be held answerable because it refused to receive coal hauled by wagons to the side tracks of a station, and that the power to make reasonable regulations as to the manner and place where the railroad would receive coal for shipment implied the power to change and modify such regulations from time to time upon reasonable notice to the public. We do not think it necessary to attempt to add anything to the reasoning and citation of authorities by which the ruling in that case is supported. The case of the

appellants depends entirely upon their alleged right to compel the railroad company to receive the appellants' coal at Walker's Siding because other merchandise was received there. This right cannot be sustained. It is not shown that the Belt Line, designated by the railroad company as the place where, on account of the large temporary increase in the shipment of coal, it would receive it, was an unreasonable place in any way. It was a more distant place for the appellants, but it may have been nearer to others. It is not shown that, under all the circumstances, it was not a reasonable provision for the transportation of coal at Fairmont.

The case stated in the bill of complaint, and established by the depositions, was a most proper one for relief by injunction. The depositions showed that the persistent efforts of the appellants to block up the approaches to Walker's Siding with teams, which were kept there for the purpose of obstructing traffic, and the taking possession of cars intended for shippers of other merchandise, and the dumping of coal at the siding and station, had resulted during two days in suspending all freight business at the station, and threatened to continue indefinitely until the appellants had compelled submission to their demands. This amounted to a public nuisance, with immediate danger of irreparable mischief before the tardiness of the law could suppress it. In such cases the jurisdiction of courts of equity to give more adequate and complete relief by injunction has been fully sustained. In re Debs, 158 U. S. 564, 587, 588, 596, 15 Sup. Ct. 900, 39 L. Ed. 1092.

We are of opinion that the decree for a permanent injunction was, in substance, right, and should be affirmed.